UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dianna Martinez, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>   - against -<br><br>Unilever United States, Inc.,<br><br>       Defendant | 1:22-cv-05664<br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Unilever United States, Inc. ("Defendant") manufactures, labels, markets, and sells Mint Chocolate Chip ice cream under the Breyers brand ("Product").



2. According to research by Mintel, the source of a food's taste is an important factor when consumers are deciding what to buy.

3. Consumers prefer foods which get their taste from ingredients because they have nutritive value, are more natural, less processed and/or not exposed to additives and solvents used in manufacturing even natural flavoring substances.

4. The Food and Drug Administration ("FDA"), and this State's legislature, agreed with this conclusion in adopting specific naming conventions with respect to the labeling of the source of an ice cream's flavor. 21 C.F.R. § 135.110(f)(2).

5. In the context of labeling the flavor of ice cream, any flavor sources other than the characterizing ingredient are considered artificial.

6. The front label's green font statement of "Mint Chocolate Chip," description as "Cool mint ice cream," absence of qualifying terms such as "flavored," and two mint leaves tells consumers the Product will get its mint taste from mint ingredients and contain a non-negligible amount of mint ingredients.

7. However, the ingredient list on the side panel does not identify any mint ingredients.

**INGREDIENTS:** MILK, CREAM, SUGAR, COCONUT OIL, WHEY, DUTCHED COCOA (PROCESSED WITH ALKALI), VEGETABLE GUM (TARA), NATURAL FLAVOR, SOY LECITHIN.

8. According to flavor expert Bob Holmes, if the Product provided "all the flavor depth" of mint, the ingredients would list "mint extract" or "mint oil" instead of "natural flavor."

9. Because mint extract or mint oil is not a separately identified ingredient, it means that any real mint, if present, is at trace or de minimis levels as part of the natural flavor ingredient.

10. To the extent the Product may taste like mint, this is from "Natural Flavor," a

2

synthesized blend of compounds, enhancers, solvents and additives, combined in a laboratory, with little if any connection to mint ingredients.

11. Natural flavor is less expensive than mint ingredients, and highly concentrated, so less needs to be used.

12. By omitting "flavored" from the front label, consumers are not told that the taste is not from mint ingredients. See 21 C.F.R. § 135.110(f)(2)(ii)-(iii).

13. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

14. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

15. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

16. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

17. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $4.99 for 1.5 Quarts, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

18. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

19. The aggregate amount in controversy exceeds $5 million, including any statutory and

punitive damages, exclusive of interest and costs.

20. Plaintiff XX is a citizen of Cary, Illinois, McHenry County.

21. Defendant Unilever United States, Inc. is a Delaware corporation with a principal place of business in Englewood Cliffs, New Jersey, Bergen County.

22. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

23. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, in thousands of locations, including grocery stores, big box stores, warehouse club stores, drug stores, convenience stores, and online across the States covered by Plaintiff's proposed classes.

24. Venue is in this District with assignment to the Eastern Division because Plaintiff resides in Cook County and a substantial part of the events and omissions giving rise to these claims occurred in here, including Plaintiff's purchase of the Product and awareness the labeling was false and misleading.

## Parties

25. Plaintiff Dianna Martinez is a citizen of Cicero, Cook County, Illinois.

26. Defendant Unilever United States, Inc. is a Delaware corporation with a principal place of business in Englewood Cliffs, Bergen County, New Jersey.

27. The Breyers brand of ice cream was founded in 1866 and has been known for using the highest quality ingredients.

28. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at locations including Jewel-Osco, 7122 40th St, Stickney, IL 60402, between September and October 2022, among other times.

29. Plaintiff bought the Product because she expected it contained a non-negligible amount of mint ingredients to provide its mint taste, because that is what the representations said and implied.

30. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

31. Plaintiff bought the Product at or exceeding the above-referenced price.

32. Plaintiff is part of the majority of consumers who prefer foods which get their taste from their ingredients, for the reasons indicated.

33. Plaintiff read and relied on the word "Mint" and pictures of mint leaves to believe the Product's mint taste was from mint ingredients.

34. Plaintiff did not expect the mint taste was from ingredients other than mint, because, in her experience, this is disclosed to consumers by qualifying front label terms such as "flavored."

35. Plaintiff paid more for the Product than she would have had she known the representations were false and misleading, as she would not have bought it or paid less.

36. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes.

37. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.

38. Plaintiff is unable to rely on the labeling of not only this Product, but other similar products represented as containing non-negligible amounts of mint ingredients, because she is

unsure of whether their representations are truthful.

## Class Allegations

39. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, Virginia, North Carolina, Kentucky, Utah, Nebraska, Kansas, and Wyoming, who purchased the Product during the statutes of limitations for each cause of action alleged.

40. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

41. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

42. Plaintiff is an adequate representative because her interests do not conflict with other members.

43. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

44. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

45. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

46. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act</u>
<u>("ICFA"), 815 ILCS 505/1, *et seq.*</u>

47. Plaintiff incorporates by reference all preceding paragraphs.

48. Plaintiff relied on the representations and omissions to believe the Product's mint taste was from mint ingredients and that it contained more than a negligible amount of mint.

49. Plaintiff and class members were damaged by paying more for the Product than they would have if they knew the present facts.

<u>Violation of State Consumer Fraud Acts</u>
<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

50. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

51. The members of the Consumer Fraud Multi-State Class were harmed in the same manner as Plaintiff, and reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statutes invoked by Plaintiff.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

52. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that its mint taste was from mint ingredients and that it contained a non-negligible amount of mint ingredients.

53. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

54. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as foods which got their characterizing taste from ingredients instead of added flavoring, and developed its marketing and labeling to directly meet those needs and desires.

55. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that its mint taste was from mint ingredients and that it contained a non-negligible amount of mint ingredients.

56. The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant that its mint taste was from mint ingredients and that it contained a non-negligible amount of mint ingredients.

57. Defendant described the Product so Plaintiff believed that its mint taste was from mint ingredients and that it contained a non-negligible amount of mint ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

58. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

59. This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Breyers brand.

60. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

61. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

62. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

63. The Product did not conform to its affirmations of fact and promises.

64. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if its mint taste was from mint ingredients and that it contained a non-negligible amount of mint ingredients.

65. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected its mint taste was from mint ingredients and that it contained a non-negligible amount of mint ingredients, and relied on Defendant's skill and judgment to select or furnish such a suitable product.

### Negligent Misrepresentation

66. Defendant had a duty to truthfully represent the Product, which it breached.

67. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted brand known for the highest quality ice cream products.

68. The representations and omissions went beyond the specific representations on the packaging, and incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that Defendant has been known for.

69. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

70. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

71. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

Case: 1:22-cv-05664 Document #: 1 Filed: 10/15/22 Page 10 of 11 PageID #:10

### Fraud

72. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that its mint taste was from mint ingredients and that it contained a non-negligible amount of mint ingredients.

73. Defendant was aware, based on internal studies, of consumer preferences for foods which get their taste from characterizing ingredients instead of "natural flavor."

### Unjust Enrichment

74. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations;
3. Awarding monetary, statutory and/or punitive damages and interest pursuant to the present claims;
4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
5. Other and further relief as the Court deems just and proper.

Dated: October 15, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com